Itasca Independent School District v. E. A. McElroy et al.

Decided January 22, 1910.

**1.—Amendment of Constitution—Article XVII, Section I, Construed.**

Under the provisions of section I of article XVII of the Constitution, in order to adopt a proposed amendment to the Constitution, it is only necessary that the amendment receive a majority of the votes cast on the proposition involved, and not a majority of the total votes polled at the election.

**2.—Independent School Districts—Levy of Tax.**

Under the provisions of the Constitution as amended in 1908 and the Act of the 31st Legislature putting said amendment into effect, the authority of the voters of an independent school district for the levy of a tax and the issuance of bonds by the school trustees is to be secured by the election for that purpose; and the specific rate of tax for maintenance and for bond purposes respectively is to be fixed by the trustees, within the limits allowed, to pay first the interest on the bonds and provide a sinking fund for their retirement at maturity, and then such an amount fixed for maintenance as the prescribed maximum rate will permit.

**3.—Same—Act Constitutional.**

The Act of the 31st Legislature putting into effect the constitutional amendment of 1908 concerning the levy of a school tax, is not subject to the objection that it is violative of the Constitution in that the aggregate of the taxes authorized thereby for the payment of bonds and the maintenance of schools exceeds the constitutional limit of fifty cents on the one hundred dollars of valuation.

**4.—Same—Rate of Tax.**

Since the passage of the Act of 1908, it is not necessary that the specific rate of tax to be levied by the school trustees should be stated in the order for the election nor determined at the election held to decide whether an additional tax for school purposes should be levied and collected.

**5.—Same—Orders for Election—Construction.**

The trustees of an independent school district made and entered separate orders on the same day for an election to determine whether a tax should be levied for maintenance of the schools not to exceed fifty cents on the one hundred dollars valuation, and to determine whether bonds should be issued and the tax levied for their support. Held, the two orders amounting practically to one order for an election to determine whether or not a maintenance tax and bond tax, which together should not exceed fifty cents on the one hundred dollars valuation, should be levied, and levied in such an amount for bond purposes as not to exceed the limit prescribed by law, and for maintenance purposes such amount as, added to the amount for bond purposes, would not exceed the maximum of fifty cents allowed for both purposes.

**6.—Same.**

When the maximum tax of fifty cents on the one hundred dollars is ordered at an election to determine whether both a tax for the support of school bonds and an additional tax for the maintenance of the schools shall be levied, it becomes the duty of the school trustees to so apportion the tax between the two purposes as not to violate the law on the subject, and this, though the order for the election was susceptible of the construction that the maximum tax of fifty cents on the one hundred dollars valuation was intended for the maintenance alone of the schools.

**7.—Same—Order for Election.**

In independent school districts authority is conferred upon the trustees of such districts to order elections to determine whether an additional school tax shall be levied and collected. In common school districts such authority is conferred upon the county judge and notice must be given by the sheriff.

Appeal from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*R. V. Davidson,* Attorney-General, *C. A. Leddy,* Special Assistant Attorney-General, and *Ivy, Hill & Greenwood,* for appellants.—Where it is provided by law that a proposition shall be submitted to the voters, and those favoring it shall cast an affirmative vote, and those opposed a negative vote, and that a majority of the votes given is necessary to the adoption of the measure, then the only votes to be considered in determining the result are those cast on the particular question; especially is this true when there is no express provision of law to the contrary. Although the proposition was submitted in a general election, and although the highest number of votes were on some other question or for some candidate, it would make no difference. Green v. State Board of Canvassers (Idaho), 47 Pac., 259; State v. Barnes (N. D.), 55 N. W., 883; Gillespie v. Palmer, 20 Wis., 572; Bott v. Secretary of State (N. J.), 45 L. R. A., 251; Howland v. San Joaquin County Supervisors, 41 Pac., 864; article IV, section 3, Const.; Rev. Stats., arts. 1760, 1761; Election Laws, 29th Leg., p. 529, sec. 36; City of South Bend v. Lewis, 37 N. E., 986; Montgomery County Fiscal Court v. Trimble (Ky.), 42 L. R. A., 738; State v. Langlie (N. D.), 32 L. R. A., 723; Marion County Coms. v. Wink-

ley, 29 Kans., 36; Cass County v. Johnston, 95 U. S., 360; Walker v. Osyald, 11 Atl., 711; Smith v. Proctor, 14 L. R. A., 403; May v. Bermel, 20 N. Y. App. Div., 53, 46 N. Y. Supp., 622; Schlichter v. Keiter, 22 L. R. A., 161; Bishop v. State, 39 L. R. A., 278, 1040; Carroll County v. Smith, 111 U. S., 556.

The taxpaying voters of Itasca Independent School District had the right by a majority vote to authorize the issuance of the bonds for building purposes, and at the same time, in said school district election, to authorize a maintenance tax, the aggregate tax for both purposes not being in excess of fifty cents on the one hundred dollars valuation, and it was not necessary that the rate of tax be determined in said election. The voters assented to, and authorized a rate not to exceed the maximum as fixed by the Constitution and laws. Article 7, section 3, of the Constitution, as amended by Const. amendment adopted in 1908; Acts of 31st Legislature, chapter 12, page 17, and sections 154 and 154a; County of Mitchell v. City Natl. Bank of Paducah, Ky., 91 Texas, 361; Bassett v. City of El Paso, 88 Texas, 168; Dwyer v. Hackworth, 57 Texas, 245; City of Fort Worth v. Davis, 57 Texas, 236.

The control of the public schools in said school district, and the calling of a tax election, and all matters incident to said school district, rested with its trustees; and the county judge, sheriff and Commissioners' Court have nothing to do with same. The county judge was not authorized to call the election in question, as contended by appellees. Sections 6, 50, 51, 52, 53, 54, 58, 67, 69, 70, 71, 72, 76, 77, 78, 81, 133, 136, 153, 154, 157, 158, 161, 173, and especially sections 162, 163, 164, 165, 166, 167, 168, 169 of Acts of 29th Legislature, pages 263 to 311.

A Constitution which provides that an amendment should be declared adopted where it receives a majority of the votes cast is fully complied with when a majority of those voting on that question vote in favor thereof. Alley v. Denson, 8 Texas, 297; Cass County v. Johnston, 95 U. S., 360; Douglass v. Pike County, 101 U. S., 677; Board v. Smith, 111 U. S., 556; Knox County v. National Bank, 147 U. S., 99; Gillespie v. Palmer, 20 Wis., 572; Dayton v. City of St. Paul, 22 Minn., 400; Green v. Board (Idaho), 47 Pac., 259; State v. Barnes, 55 N. W., 883; Bott v. Wurts, Sec. of State (New J.), 45 L. R. A., 251; Smith v. Proctor, 14 L. R. A., 403; May v. Bermel, 20 N. Y. App. Div., 53, 46 N. Y. Supp., 622; Sanford v. Prentice, 28 Wis., 358; Howland v. Board of Supervisors, 41 Pac., 864; Montgomery County Fiscal Court v. Trimble (Ky.), 47 S. W., 773; State v. Langlie, 32 L. R. A., 723; Marion County Coms. v. Winkley, 29 Kan., 36; State v. Echols, 20 Pac., 523; Taylor v. Taylor, 10 Minn., 107; Citizens v. Williams, 37 L. R. A., 768; Taylor v. McFadden, 50 N. W., 1070; People v. Town Clerk of Harp, 67 Ill., 62; Dunnovan v. Green, 57 Ill., 67; State v. Padgitt, 19 Florida, 339; Louisville & N. R. Co. v. Davidson County Court, 62 Am. Dec., 452; Madison County v. Priestley, 42 Fed., 817; Oldknow v. Wainwright, 2 Burrows, 1017; Gosling v. Vealey, Adol. & E. (N. S.), 406, 7 Q. B.; Rushville Gas Co. v. City of Rushville, 6 L. R. A., 315; State v. Dillon, 25 N. E., 136; Mobile Savings Bank v. Board of Supervisors

of Oktibbeha County (D. C.), 22 Fed., 580; State v. Mayor of City of St. Joseph, 37 Mo., 272; State v. Binder, 38 Mo., 455; Metcalfe v. City of Seattle, 1 Wash. St., 297; Yesler v. City of Seattle, 25 Pac., 1014; Lamb v. Cain, 14 L. R. A., 518; State v. Vanosdal, 15 L. R. A., 832; City of South Bend v. Lewis, 37 N. E., 986; Pittsburg, C.. C. & St. L. Ry. Co. v. Harden, 37 N. E., 324; Schlichter v. Keiter, 22 L. R. A., 161; Kuns v. Robertson, 40 N. E., 354.

Where the manner of exercising a given power is prescribed by the Constitution, the method thus designated is exclusive. State v. Barnes, 24 Fla., 29; Holland v. State, 15 Fla., 553; Field v. The People, 3 Ill., 79; Fletcher v. Oliver, 25 Ark., 289; Page v. Allen, 58 Pa. St., 338; Opinion of Justices, 18 Me., 458.

When both executive and legislative departments have by practical construction of a constitutional provision accepted and acted upon it as having a certain meaning, the conclusion so reached will be accorded great weight by the judiciary when called upon to construe the law, and will in general control whenever the question is doubtful or open to reasonable doubt. Fairbank v. United States, 181 U. S., 283; State v. McAllister, 88 Texas, 286; Levin v. United States, 128 Fed., 826; City of Fort Worth v. Davis, 57 Texas, 225; Nye v. Foreman, 74 N. E., 140, 215 Ill., 285; Wallace v. Board of Equalization, 86 Pac., 365; State v. New Orleans Ry. & L. Co., 40 So., 597; State v. Galusha, 104 N. W., 197; County of Denver v. Board of Commissioners, 77 Pac., 858; Epping v. City of Columbus, 43 S. E., 803; State v. Tingey, 67 Pac., 33; Board of Railway Commissioners of Calif. v. Market St., Ry. Co., 64 Pac., 1065; Frost v. Pfeifer, 58 Pac., 147.

The records of the office of the Secretary of State showing the election returns since the adoption of the Constitution of 1876, of which this court can take judicial knowledge, shows that at the general election in November, 1890, the total vote cast for Governor in said election was 343,270. An amendment to article VIII, section 9, of the Constitution, was voted on which received the following vote:

　　　For the amendment...........................129,391
　　　Against the amendment........................ 71,637

At a special election held on August 11, 1891, five amendments were submitted. The amendment to article XVI, section 11, received the following vote:

　　　For the amendment...........................58,797
　　　Against the amendment........................18,320
　　　　　　　　　　　　　　　　　　　　　　　　　　——————
　　　Total vote cast on said amendment...........77,117
　　　For amendment to article V, amending various
　　　　sections of the judiciary provision of the Con-
　　　　stitution, received ...........................37,445
　　　Against said amendment.........................35,695

Taking the highest vote cast in this election on the amendment to article XVI, section 11, as the number of votes cast in the election, we find that the amendment to article V did not receive a majority of all the votes cast in this election.

In the general election in November, 1894, the total vote cast for

Governor in said election was 422,716. In this election an amendment to article III, section 51, was voted upon and received the following vote:

> For the amendment..........................192,033
> Against the amendment....................... 79,718

At the general election in November, 1904, the total vote cast for Governor was 280,241. In this election three amendments were submitted.

Article III, section 52, received the following vote:

> For the amendment............................66,003
> Against the amendment........................50,373

Article III, section 51, received the following vote:

> For the amendment............................90,042
> Against the amendment.........................42,035

Article XVI, section 16, received the following vote:

> For the amendment............................70,056
> Against the amendment........................54,160

In the general election in November 1906, the total vote cast for Governor was 183,704. At this election three amendments were submitted, two of which received a larger vote in favor of than against.

Section 2, article VIII, received the following vote:

> For the amendment............................58,125
> Against the amendment........................31,674

Section 9, article VIII, received the following vote:

> For the amendment............................44,936
> Against the amendment........................42,144

(See Executive Records, 1890, 1891, 1894, 1904, 1906, office Secretary of State.)

That this court can take judicial knowledge of the election returns on constitutional amendments is well settled. Prohibitory amendment cases, 24 Kan., 700; State v. Cooley, 58 N. W., 154; State v. Stearns, 72 Minn., 200, 75 N. W., 210; Gardner v. Collector, 6 Wall., 499; Ottman v. Hoffman, 28 N. Y. Supp., 28; Kokes v. State, 76 N. W., 467; State v. Seibert, 32 S. W., 670; Martin v. Aultman, 49 S. W., 749; State v. Swift, 69 Ind., 505.

*Morrow & Smithdeal,* for appellees.—The qualified, property taxpaying voters of the Itasca Independent School District having at an election held for that purpose voted a tax of fifty cents on the one hundred dollars upon all the taxable property in said district, the taxing power of said district was exhausted and there existed therein no power or authority to levy an additional tax to pay the interest and sinking fund upon the bonds to be issued, and no authority to issue bonds. Amendment to the Constitution, article III, section 7, contained in the Act of the Thirtieth Legislature, page 413; Acts of the Thirty-First Legislature, chapter 12, section 154, page 21; Dumphy v. Humboldt County Supervisors, 58 Iowa, 273; Atchison, T. & S. F. Ry. Co. v. Atchison County Commissioners, 47 Kan., 722; State v. Cage, 34 La. Ann., 506; Wattles v. Lapeer, 40 Mich., 624; Arnold v. Hawkins, 95 Mo., 569; Cummings v. Fitch, 40 Ohio St., 56.

If it should be held that the Itasca Independent School District in

voting a maintenance tax had not voted a specific rate of fifty cents on the one hundred dollars, but had simply given the trustees of the district authority to levy a rate for maintenance purposes in any sum less than fifty cents on the one hundred dollars, then we submit as our second proposition that such delegation of authority to the trustees is not authorized by the amendment to article III, section 7, of the Constitution. Amendment to section 3, article VII, of the Constitution, Laws of 1907, page 413.

The Act of the Thirty-First Legislature declaring that the trustees of a district may levy a tax of not exceeding fifty cents on the one hundred dollars without first submitting to the voters a specific amount of tax to be levied, is in conflict with the amendment to article III, section 7, of the Constitution, in that the amendment to the Constitution only grants the power to the Legislature to authorize the trustees to levy a tax, provided the voters "vote such tax." Amendment to article III, section 7, Constitution, Laws of 1907, page 413.

The words "such tax" in the amendment to the Constitution refers to the preceding language in said amendment, "an additional ad valorem tax," and the power granted to the Legislature is to authorize the trustees to levy such ad valorem tax only as shall have been voted by the voters at an election held for that purpose, and in this case there having been no election held for the purpose of determining the rate of tax, and the voters not having voted the amount of tax, it follows that a levy is unauthorized. Warner v. Houston, 28 S. W., 408; United States v. Gooding, 12 Wheating (U. S.), 477; 27 Am. & Eng. Enc. Law, 361; Evans v. State, 50 N. E., 820; Ventura County v. Clay, 112 Cal., 65; Tillson v. State, 29 Kan., 452; Long v. Wagoner, 47 Mo., 179; State v. Brannon, 53 N. C., 208; Garvin v. State, 13 Lea. (Tenn.), 172; Valentine v. Borden, 100 Mass., 280.

The amendment to article III, section 7, of the Constitution, gives power to the Legislature to provide the method whereby the qualified, taxpaying voters may fix the rate of tax to be levied against their property, viz.: "At an election held for that purpose," and having prescribed that manner of exercising the power, the manner thus prescribed is exclusive and prohibits the Legislature from authorizing the school trustees to fix the rate of tax to be levied. Black on Interpretation of Law, 23; amendment, article III, section 7, Laws 1907, page 413; State v. Barnes, 24 Fla., 29; Holland v. State, 15 Fla., 553; Fletcher v. Oliver, 25 Ark., 289; Page v. Allen, 58 Pa. St., 338.

The election held in said Itasca Independent School District for the issue of bonds and levy of tax therefor is void because the order of election and the notice of election therefor failed to state any amount of tax to be levied, and failed to state that the rate would be fifty cents on the one hundred dollars property valuation or less than that amount. Amendment, article III, sec. 7, Constitution, Laws 1907, page 413; Laws 1909, page 21, sec. 154; Parks v. West, 108 S. W., 470; Lowrance v. Schwab, 46 Texas Civ. App., 67; Acts of 1905, chapter 124, sec. 157; Acts of 1909, chapter 12, sec. 154;

Fort Worth v. Davis, 57 Texas, 225; Frosh v. Galveston, 73 Texas, 410; Sedgwick on Statutory and Constitutional Law, 397.

The amendment to article III, sec. 7, of the Constitution of the State, having been submitted to a vote of the people at a general election, at which there were cast 300,743 votes; and there having been cast for said amendment 130,402 votes, it did not receive a majority of the votes cast, although there were cast against it only 52,077 votes. State v. Babcock, 17 Neb., 188, 22 N. W., 372; Tecumseh Bank v. Saunders, 71 N. W., 779; State v. Powell, 27 So., 927; State v. Swift, 69 Ind., 505; In re Denny (Ind.), 59 N. E., 360; Rice v. Palmer (Ark.), 96 S. W., 396; People v. Town of Berkeley, 36 Pac., 591, 23 L. R. A., 838; People v. Brown, 11 Ill., 478; People v. Garner, 47 Ill., 246; People v. Wiant, 48 Ill., 263; Chestnutwood v. Hood, 68 Ill., 132; Belknap v. City of Louisville, 36 S. W., 1118, 34 L. R. A., 256; Stebbins v. Judge, 66 N. W., 594; Bayard v. Klinge, 16 Minn., 249; Everett v. Smith, 22 Minn., 53; Singerland v. Norton, 61 N. W., 322; Smith v. Board, 65 N. W., 956; State v. Winkelmeier, 35 Mo., 103; State v. Sutterfield, 54 Mo., 391; State v. Mayor of St. Louis, 73 Mo., 435; State v. Francis, 8 S. W., 1; State v. McGowan, 39 S. W., 771; State v. Lancaster County, 6 Neb., 474; State v. Bechel, 34 N. W., 342; State v. Anderson, 42 N. W., 421; State v. Van Camp, 54 N. W., 113; Bryan v. City of Lincoln, 50 Neb., 620; Enyart v. Trustees, 25 Ohio St., 618; State v. Foraker, 23 N. E., 491, 6 L. R. A., 422; Sanford v. Prentice, 28 Wis., 358.

Whether or not a constitutional amendment has been adopted and becomes a part of the organic law is a question which the judicial branch of the State has a right to determine, and that its right to determine it can not be forestalled by the certificate of any executive officer. Rice v. Palmer, 96 S. W., 396; State v. Powell, 27 So., 928; State v. McBride, 29 Am. Dec., 636; University of N. C. v. McIver, 72 N. C., 76; Westinghausen v. People, 6 N. W., 641; State v. Timme, 11 N. W., 785; Oakland Paving Co. v. Hilton, 11 Pac., 3; Prohibitory Amendment cases, 24 Kan., 700; Secombe v. Kittelson, 12 N. W., 519; State v. Wurts, 45 L. R. A., 251; Collier v. Frierson, 24 Ala., 108; Koehler v. Hill, 60 Iowa, 543, 14 N. W., 738, 15 N. W., 609.

TALBOT, Associate Justice.—The appellees, property taxpaying voters in the Itasca Independent School District, brought this suit against said district, which was a school district organized for school purposes only, and the trustees thereof, seeking an injunction restraining the issuance of bonds and the collection of taxes therefor, and also restraining the levy and collection of a tax for maintenance of the school in said district.

It is alleged that the Itasca Independent School District is a corporation organized for school purposes only, that within said district there is situated the town of Itasca, Hill County, Texas, which is incorporated under the general laws of this State as a town of over one thousand and under ten thousand inhabitants; that the boundary of said independent school district embraces other territory besides

that embraced in the corporate limits of said town of Itasca, to wit: in all about sixteen square miles of territory; that the other defendants, namely, W. H. Coffman, M. S. Wood, W. C. Tibbs, C. L. Martin, J. T. Emerson, W. T. Bethany and W. S. Reese, all of whom reside in Hill County, Texas, are the duly elected and qualified trustees of said school district; that the defendants, Coffman, Wood, Tibbs and Bethany, acting in their capacity as trustees of said Itasca Independent School District, together with R. R. Weir and W. R. Carr, who were then trustees, on the 12th day of April, 1909, entered on the minutes of said school district an order for an election to be held therein on the 15th day of May, 1909, to determine whether the bonds of said district should be issued to the amount of $35,000, payable forty years from date and bearing interest at the rate of five percent per annum for the purpose of constructing and equipping a public school building of brick material, and whether there should be annually levied, assessed and collected on the taxable property of said district for the current year and annually while said bonds or any of them are outstanding, a tax sufficient to pay the current interest on said bonds and provide a sinking fund to pay the principal at maturity; and whether said board of trustees should be authorized to annually levy and collect a tax for the support and maintenance of the schools of said district, not to exceed fifty cents on the one hundred dollars valuation of taxable property in said district, to be levied and collected for the year 1909 and annually thereafter until discontinued as provided by law; that on May 15, 1909, an election was held in said school district under said orders, and resulted in favor of said bonds and the said levies, and so declared by defendants; that the defendants were about to issue said bonds and levy said taxes in conformity with said orders and unless restrained would do so.

The principal grounds alleged for the issuance of the injunction prayed for are, that the defendants claim the right to issue the bonds and levy the taxes authorized by the election of May 15, 1909, by virtue of an Act of the Thirty-First Legislature, entitled: "An Act putting into effect the constitutional amendment adopted by the people at the last general election, relating to public schools, by amendment, sections 50, 57, 58, 59, 60, 61, 63, 65, 66, 76, 77, 78, 80, 81, and 154, and adding 154a of chapter 124 of the Acts of the regular session of the Twenty-Ninth Legislature, relating to school districts and school funds; repealing all laws and parts of laws in conflict herewith, and declaring an emergency," and that said constitutional amendment, which was an amendment to section 3, article VII, of the present Constitution, was never in fact adopted; that whilst it received more votes cast in its favor than cast against it, yet it did not receive a majority of all the votes polled in the general election at which it was submitted, and therefore any Act of the Legislature thereunder is void and any act of defendants thereunder is void, the contention being that article XVII, section 1, of the Constitution of this State, referring to proposed amendments thereto when submitted in a general election, requires the amendment to receive a majority of all the votes cast in such election, and that a

majority of the votes cast on the proposed amendment is not sufficient to legally ratify the same; that the election for the bonds is void because the Act of the Thirty-First Legislature under which said election was held is void for the reason that the caption of said Act purports to put into effect the amendment to article VII, section 3, of the Constitution, adopted in 1908, and neither said amendment nor the caption of said Act of the Legislature contains any reference to the issuance of bonds; that by the order of the school board for said election, the amount of tax that may be levied to pay said bonds, interest and sinking fund, is not limited to any rate of taxation; that if said bonds should be issued and placed in the hands of innocent purchasers not residents of the State, the same might be a lien upon the property in the district, and would require a levy of taxation upon plaintiffs' property in excess of the tax authorized by the Constitution and laws of the State; that no amount of tax was fixed or submitted to the voters, nor were they called upon to pass on the amount, and that as submitted, the amount is indefinite and undetermined; that the adoption of the maintenance tax exhausted the taxing power of the district, and leaves nothing to support the bonds; that the board of trustees had no authority to order said election, but same had to be done by the county judge, and that the sheriff should have given notice of the election and not the president of the school board, and that the county judge, Commissioners' Court and sheriff had nothing to do with the election in question; that the Act of the Thirty-First Legislature with reference to bonds and rate of tax in school district matters, is unconstitutional because unintelligible, and because it authorizes a greater tax than twenty-five cents for payment of interest and sinking fund upon the bonds, and authorizes a change in rate of taxation as fixed by vote of the people, through the county superintendent and Commissioners' Court, and attempts to fix an automatic rate in the particular district, though fixed by the voters.

The defendants answered by general and special exceptions to plaintiffs' petition, a general denial and, among other things, alleged under oath that they had no intention of levying and collecting more than fifty cents on the one hundred dollars valuation of taxable property in the school district, and that they would make no attempt to collect more than said sum for all purposes; that they have not and will not attempt to collect more than twenty-five cents on the one hundred dollars valuation of said property for the purpose of paying interest and creating a sinking fund sufficient to pay said bonds at maturity; that the amount of the assessed taxable property in said district for the year 1908 amounts to the sum of $1,067,120 and that the amount of taxable property for the year 1909 is greater than it was for 1908.

It is shown by the record, and conceded, that the constitutional amendment in question received a majority of all the votes polled on that proposition, but did not receive a majority of all the votes polled in the election at which it was submitted. Upon a hearing in chambers, the court on July 15, 1909, granted plaintiffs an injunction restraining defendants from the sale of the bonds described in plain-

tiffs' petition and from collecting the taxes therein mentioned. From this order and judgment of the court appellants have perfected an appeal to this court.

With the exception of the allegation that the election should have been ordered by the county judge, etc., which is not therein insisted upon, the propositions contended for by appellees in their brief in support of the District Court's action in granting the injunction applied for by them, is sufficiently indicated by the foregoing grounds alleged therefor. Appellants challenge the sufficiency of these grounds to justify the court's action, and insist, in effect (1), that it did not require a majority of all the votes cast in the general election held in 1908, at which the amendment of article VII, section 3, of the Constitution, was voted on, to legally ratify and adopt said amendment, but that a majority of the votes cast thereon was sufficient for such purpose; (2) that the taxpaying voters of Itasca Independent School District had the right by a majority vote to authorize the issuance of the bonds for building purposes, and at the same time in said school district election to authorize a maintenance tax, the aggregate tax for both purposes not being in excess of fifty cents on the one hundred dollars valuation, and it was not necessary that the rate of tax be determined in said election; that the voters in said election expressed their assent to and authorized a rate of tax for both purposes not to exceed the maximum fixed by the Constitution and laws; (3) that the fact that the voters assented to the maximum maintenance tax, did not fix it in that amount and did not thereby make it obligatory on the trustees of the school district to levy and collect for maintenance purposes only, fifty cents on the one hundred dollars valuation of the property situated in said district, therefore the adoption of the maintenance tax did not exhaust the taxing power of the district and leave the trustees without authority to levy the tax required to pay the interest on the bonds and provide the sinking fund necessary for their retirement at maturity; (4) that the control of the public schools in said school district, and the calling of a tax election, and all matters incident to said district, rested with the trustees, and the county judge, sheriff and Commissioners' Court had nothing to do with the same; (5) and, generally, that the adoption of the maintenance tax, and the tax to support the bonds, and all the proceedings of the appellants were authorized and have been in strict conformity with the Constitution and laws of the State.

That the amendment to article VII, section 3, of the Constitution, which was voted on at the general election in 1908, was adopted as prescribed by article XVII, section 1, of the Constitution of this State, is definitely settled by the opinion of our Supreme Court rendered in this case upon the certification of the question for their decision. See 103 Texas, 64. The Supreme Court in construing article XVII, section 1, of the Constitution, which prescribes the procedure for the amendment of that instrument, holds that the language of said article, namely, "A majority of the votes cast," means a majority of the votes cast for the proposed amendment and not a majority of the total votes polled at the election. The decision is based solely upon the court's construction of the language of said

article XVII, section 1, of the Constitution, and is in accord with the view of this court on the question. The discussion of the Supreme Court seems exhaustive and anything we could add thereto would be superfluous.

Upon the other questions involved we agree with the contentions of counsel for appellants, and believe that neither of the propositions insisted upon by the appellees can be maintained. The amendment to section 3, article VII, of the Constitution, empowers the Legislature to provide for the formation of school districts and to authorize "an additional ad valorem tax to be levied and collected within such school district for the maintenance of public free schools, and the erection and equipment of school buildings therein, provided that a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year fifty cents on the one hundred dollars valuation of property subject to taxation in said district.'" Section 154 of the Act of the Thirty-First Legislature, page 2, putting into effect the constitutional amendment referred to reads thus: "Trustees of incorporated districts that have been or may be hereafter incorporated under general or special laws for school purposes only, shall have power to levy and collect an annual ad valorem tax not to exceed fifty cents on the one hundred dollars valuation of taxable property of the district for the maintenance of schools therein, and a tax not to exceed twenty-five cents on the one hundred dollars valuation for the purchase of sites, and the purchasing, construction, repairing or equipping public free school buildings within the limits of such incorporated districts; provided that the amount of maintenance tax, together with the amount of bond tax of the district, shall never exceed fifty cents on the one hundred dollars valuation of taxable property. Said trustees shall have power to issue coupon bonds of the district for building purposes, to be made payable not exceeding forty years from date, in such sums as they shall deem expedient, to bear interest not to exceed five percent per annum, provided that the aggregate amount of bonds issued for the above named purpose shall never reach such an amount that the tax of twenty-five cents on the one hundred dollars valuation of property in the district will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity; and provided further, that no such tax shall be levied and no such bonds issued until after an election shall have been held wherein a majority of the taxpaying voters, voting at said election, shall have voted in favor of the levying of said tax, of the issuance of said bonds, or both, as the case may be; provided that the specific rate of tax need not be determined in the election." This section of the Act of the Legislature is in no way violative of or prohibited by that portion of the constitutional amendment quoted above or any other provision of the Constitution, and expressly authorizes the trustees of school districts, such as the "Itasca Independent School District," to levy and collect an annual ad valorem tax not to exceed fifty cents on the one hundred dollars valuation of taxable property in the district for the maintenance of schools therein, and a tax not to exceed twenty-five cents on the one

hundred dollars valuation for the purchasing of sites and the construction and equipping of school buildings within the limits of such district, but provides that in no event shall the amount of the maintenance tax, together with the amount of the tax for purchasing, constructing and equipping the buildings, ever exceed fifty cents on the one hundred dollars valuation of the taxable property, and that the specific rate of tax need not be determined in the election. The proviso contained in this statute that the "specific rate of tax need not be determined in the election," is not found in any former statute on the subject. On the contrary, until the passage of the Act in question by the Thirty-First Legislature the statute required that *the amount of the tax* to be levied and collected for school purposes should be determined by the voters at an election held for that purpose. And in Parks v. West, 108 S. W., 466, this court held that under the statute as it then existed an order for an election to determine whether or not a tax should be levied and bonds issued for school purposes, must state the specific rate of tax proposed to be levied; that no discretion either as to whether the levy of the tax should be made, or as to its amount, was vested in the commissioners of the county or trustees of the district; and that an election held under an order that the tax should not exceed twenty-five cents on the one hundred dollars valuation of taxable property, was void. That decision was based upon the language of the statute, that the order for the election "shall state the amount of the tax to be voted on." But, as has been seen, neither the constitutional amendment of 1908, nor the Act of the Thirty-First Legislature, contains any such language, but said Act expressly provides the specific rate of tax need not be determined in the election. This being true, we think it follows that the purpose of the election, as required by both said amendment and Act of the Legislature, in such cases is simply to determine whether or not the voters of the school district are willing to be burdened with the tax necessary for the maintenance of the schools within the district and to pay all the bonds proposed to be issued, not to exceed the maximum as fixed by the Constitution and laws. In other words, we think, that under the provisions of the present Constitution and statute relating to the subject, the authority of the voters for the levy of the tax and issuance of the bonds by the trustees is to be secured by the election, and the specific rate for maintenance and bond purposes respectively is to be fixed by the trustees, within the limits allowed, to pay first the interest on the bonds and provide the sinking fund for their retirement at maturity, and then such an amount fixed for maintenance as the prescribed maximum rate will permit. We do not concur in the contention of counsel for appellees, that the language of the amendment to the Constitution, that the Legislature "may authorize an additional ad valorem tax to be levied, provided a majority of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax," means that the voters must pass upon and fix the specific rate of tax they are to pay. This language, in our opinion, refers to the "additional ad valorem tax," which the Legislature may authorize not to exceed in

any one year fifty cents on the one hundred dollars valuation, and not the specific or exact rate to be levied and collected for the purposes authorized.

Nor do we concur in the contention urged by the appellees that the election for the issuance of bonds and levy of the tax therefor is void because the taxpaying voters of the school district, having voted a tax of fifty cents on the one hundred dollars valuation of the taxable property in said district, thereby exhausted the taxing power of the district, and·there existed therein no power or authority to levy an additional tax to pay the interest upon said bonds and provide the sinking fund for their retirement at maturity, as required by law.    Neither do we agree to the contention that the election for the issuance' of the bonds and levy of the tax therefor is void because the order and notice of said election "failed to state that the rate would be fifty cents on the one hundred dollars property valuation or less than that amount."    Whether the tax voted is only for the purpose of maintaining the schools or is for such purpose and to support the bonds for building purposes, the maximum limit fixed by the Constitution and statute is fifty cents on the one hundred dollars valuation.    Now, while there were separate orders for an election to determine whether a tax should be levied for maintenance not to exceed fifty cents on the one hundred dollars valuation, and to determine whether the bonds should be issued and the tax levied therefor, yet it appears that said orders were made on the same day and the election for both purposes ordered to be held at the same time and place.    This amounted practically to one order for an election to determine whether or not a maintenance tax and bond tax, which together should not exceed fifty cents on the one hundred dollars valuation of property situated in the district, should be levied and levied in such an amount for bond purposes as not to exceed, as prescribed by law, twenty-five cents on the one hundred·dollars valuation, and at such a rate for maintenance purposes that the amount for that purpose, together with the tax bond, would not exceed the maximum of fifty cents allowed for both purposes.

But if it must be said that the voters at the election in question authorized the levy of the maximum limit of fifty cents for maintenance purposes, still we do not think that the maximum amount must be levied for that purpose.    As contended by counsel for appellants, the fact that the voters assented to the maximum tax, when, at the same time, they authorized a bond tax, did not fix the maintenance tax in that amount, nor did it impose upon the trustees the duty or obligation to levy a fifty cent maintenance tax.    The result of the election being in favor of both the maintenance and bond tax it becomes the duty of the trustees of the school district to so apportion, by the specific rate fixed, the total amount authorized to be collected, that both purposes should be sustained rather than either should fail.    This can be accomplished by levying for bond purposes only such an amount, not exceeding twenty-five cents on the one hundred dollars valuation, as will pay the interest on the bonds and provide the sinking fund, and for maintenance purposes, such a sum as may be necessary therefor not to exceed the remaining amount

of the fifty cents allowed; and it will be presumed that the trustees will faithfully perform this duty. To do otherwise would be to do wrong, and the presumption will not be indulged that they will do wrong.

Touching the proposition to the effect that the election authorizing the issuance of bonds and the levy of a tax therefor is void because the order and notice of the election failed to state the specific rate of tax to be levied for that purpose or an amount not to exceed twenty-five cents on the one hundred dollars valuation, it may be said, that under the constitutional amendment of 1908 and the statute passed by the Thirty-First Legislature giving effect to that amendment, as we have already held, it was not necessary that the specific rate should have been so stated, and that the failure of said order and notice to state the tax would be an amount not to exceed twenty-five cents on the one hundred dollars valuation of the property in the district, did not render the election void. The sworn answer of the appellants show the assessed value of taxable property in the school district for the year 1908 to be $1,067,120. The order and notice referred to stated the amount of the bonds proposed to be issued, the rate of interest per annum, and the number of years said bonds were to run, and submitted to the voter whether or not such bonds should be issued and whether there should be annually levied and collected on all the taxable property in the district a tax sufficient to pay the current interest on the bonds and provide a sinking fund sufficient to pay the principal at maturity. This proposition carried at the election. The law fixed the maximum amount of the tax thus authorized for said purposes at twenty-five cents on the one hundred dollars valuation, but left the specific rate to be determined and fixed by the trustees. What rate of tax was necessary to pay said interest and provide such a sinking fund was a mere matter of calculation; it could thus be definitely ascertained and known, and would not exceed, according to the known valuation of property, twenty-five cents on the one hundred dollars of such valuation.

The contention that the election is void because the trustees of the district had no authority to order said election, but the same could be ordered only by the county judge and notice thereof given by the sheriff of the county, is not believed to be well taken. In common school districts, such elections are to be ordered by the county judge and notice thereof given by the sheriff, but the several sections of the statutes bearing upon the question make it clear, we think, that in independent school districts, authority is conferred upon the trustees of such districts to order such elections.

It is believed that the foregoing questions are the principal ones on which the merits of the case depend and the only ones of sufficient importance to require particular notice or discussion. Our conclusion is that the facts alleged in appellees' petition are insufficient to entitle them to the relief sought.

The judgment of the District Court is, therefore, reversed, and the injunction granted by that court dissolved.

*Judgment reversed and injunction dissolved.*